I have the great pleasure of moving the admission of Brian Dean Abramson, who is a member of the bar in good standing of the highest courts of Florida, Virginia, in the District of Columbia. I have knowledge of his credentials, full knowledge indeed, Brian is my law clerk and has served in that position with distinction for these past two years. I am satisfied that he possesses the necessary qualifications, and with great pleasure I move his admission as a member of the bar of this court. Do we have an objection? No, in fact I second the motion. Well then, I'd have to file a dissent to vote against, but I'm not going to. I'm going to sustain the motion and we'll ask our clerk to administer the election. If you would raise your right hand, we swear and affirm that you will report yourself as an alert attorney and counsel of this court, uprightly and according to the law, and that you will support the Constitution of the United States of America. I do. Congratulations and welcome to the bar of the United States Court of Appeals. Now we'll move to our first case this morning, Icon Health versus Octane Fitness. Mr. Laycock. Welcome back to the court. Thank you, Your Honor. It pleases the court. I'm Larry Laycock of the Workman Nidegger Firm and I'm appearing on behalf of Icon Health and Fitness. Today the governing authorities and facts of the instant case combine to demonstrate legal error in the orders of the district court. Proper construction of the terms in the asserted patent claims give rise to at least a genuine issue of literal infringement under the circumstances of this case. The grant of summary judgment should be reversed for two independent reasons. First, the district court's conclusion that the C-channel is part of the corresponding structure for the means for connecting claim limitation violates established doctrines of patent law and constitutes the monster of legal error. If it isn't, what other means for connecting are disclosed? I'm sorry, with the electronics, I did not hear your question, Your Honor. What other means for disclosed if it isn't the C-channel? Your Honor, the question is appropriate and helpful to the discussion today for the reason that a careful reading of column 4 of the 710 patent carefully explains the distinction between the attaching means or the C-channel configuration and distinguishes it from the connecting means that we find at line 26 of column 4. In fact, column 4 actually calls out the present invention also includes connecting means. Earlier in line 3 of column 4 of the 710 patent, you'll recall that it calls out separately the attaching means. And this leads us to the doctrine of law that demonstrates that you cannot, under the circumstances of this case, include the slidable attachment or the C-channel attaching means as part of the means for connecting limitation. For the reason that claim differentiation would require that this not be a part of the claim limitation for the connecting means. For example, I draw your attention to claim 8, which very clearly in the patent distinguishes the C-channel from any part of the connecting means. It says, wherein, adding an additional limitation to everything else found in claim 1, wherein the first end of each stroke rail is slidably attached to the frame. And so we can know very clearly... Is that inconsistent with the C-channel? It is not inconsistent. In fact, it is completely consistent with the C-channel because it provides for a sliding attachment. And it's in reference, indeed perfect reference, to the column 4 line 3 attaching means description. I would further call your attention to claim 12. There again we have a case of claim differentiation. Regardless of how that's construed, where is the linear reciprocating motion in the octane accused device? The linear... It's not linear. It's arcuate. There is a slight arc. That is correct, Your Honor. Under the circumstances of this case, the unrebutted testimony of record demonstrates that that slight arcuate motion is consistent with and substantially similar to the linear motion that must be converted into elliptical motion. And so what we have is a situation where even if there is not a finding of literal infringement, certainly there is a finding of sufficient evidence to demonstrate infringement under the doctrine of equivalence. And it's been demonstrated, as Dr. Rasti, the expert in this particular case, pointed out, that the insubstantial differences between the slight arcuate motion that's converted into elliptical motion is simply provided for and demonstrated as almost identical. And it is also helpful to understand that even the expert for octane said that these parts, the crank arm, when we get down to the essence of what the connecting means is, are interchangeable. But arcuate motion was in the prior art. Why doesn't that suggest that they're practicing then only the prior art and you can't capture through the prior art, capture through the doctrine of equivalence, what was in the prior art? The question goes to a single element, Your Honor. If what we're doing is identifying the single element instead of the claim in its entirety, then the existence of the arcuate motion in the prior art would be an issue. But here it is not for the reason that it's only a singular and subset of the elements that must be shown in the prior art in order to overcome the case for infringement. That's not been shown in the court below. And in fact, the court, in route to the determination in granting summary judgment, ignored the unrebutted evidence of record demonstrating that there was indeed a case of equivalence with respect to that particular claim element. And distinguished from the prior art, because none of the prior art, Your Honor, included the required element of selectively varying the size of the substantially elliptical path. And so in order to overcome the claim, it would have to include all of the elements of the claim. It does not. For that reason, there is a case of literal infringement in our submission. And at even the worst case scenario, Your Honor, there would be sufficient evidence to remand to the trial court on the issue of doctrine of equivalence. Further, with respect to the means for connecting, it is important to note that the lower court's determination violates the established doctrines of patent law, but does so in a way that requires a reversal and a remand. Here, the doctrine of claim differentiation has been ignored. Furthermore, the octane crank arm connector admittedly is identical to the crank arm connector in the 710 patent. At the point where we see in the appendix 2535, the octane reply brief, octane concedes that it has structure that ICON could reasonably argue is equivalent. These structures have the capability of converting, Your Honor, a linear motion into an elliptical motion. That capability is all that need be shown. This court's decision in Hewlett-Packard make that very clear. This is an apparatus claim. It's what it is, not what it does. Like the crane arm connector in the patent, octane's crank arm connector has the capability required by the claimed function. I'd now like to turn briefly to the stroke rail argument. The district court adopted a claim construction that this court has condemned as rarely, if ever, correct. In the instant case, it is the incorrect interpretation. The district court improperly concluded that there is not a stroke rail in the accused devices because there are intervening parts. Yet the intervening parts that are shown in every single embodiment in the 710 patent demonstrate that such a construction would simply disregard the law that requires that the claims read on the embodiments found in the patent. And so what we have is a construction. Could you show me some of the intervening parts, please? Your Honor, in Figure 1, the individual parts and intervening parts would be, for example, pin 76. There you have a situation on the crank arm that is the intervening part that connects. And in the accused products, you have a number of parts, including the actuator. It's referred to by admission, by octane, as a stroke rail. That stroke rail contains additional parts, intervening parts, such as a motor, a screw that is used to lengthen the stride. And each of these parts, when taken together, form the stroke rail. In fact, I find it very interesting. In this particular record, it is… 76 can't be part of the stroke rail. It's the pin. It's the connector, right? It is one of the intervening parts between the connecting means and the frame. And so the stroke rail is comprised of… In this particular case, there is a differentiation that's drawn between, for example, the stroke rail of the 710 patent and the rocker linkage portion. But the court has basically said what you can't do is have any intervening part in order to infringe. But each and every one of the configurations and embodiments shown in the 710 patent include intervening parts, nuts, bolts, pins, and a variety of parts. Well, they form part of a whole. That is correct. But in this case, if we look to the stroke rail, the stroke rail, the district court's interpretation is found at A42 and 43. Critically, the last line of 42 and A43 at lines 2 and 3, the court eliminates the possibility of the intervening parts shown in all of the figures of the 710 patent. That is demonstrable legal error. That problem coupled with the fact that in this particular case, Octane admits that they have a stroke rail. And they admit that at A2096. They admit that the Q47 has a stroke rail. They admit it at A1614 through 1619. In 18 separate references, Octane's expert refers to the stroke rail contained within the accused devices. At 1620 of the appendix, Octane's expert asserted that the Q47 employs a fixed-length stroke rail. Octane's principle brief in this case demonstrates their view that they incorporate a stroke rail. Are the stroke rails in the accused attached to a foot rail? They are, Your Honor, in each and every instance. But it would be as in the patent in suit, they are attached through intervening parts, as in the figures in the patent. And proper construction of the stroke rail element does not and should not require the stroke rail extend from the foot rail to the frame. There is nothing in the specification that even suggests that this is a critical or defining characteristic of a stroke rail. In fact, it would be strange and inappropriate to define a claim element in terms of what it is near. Whatever construction Octane or the court might devise for the stroke rail element, there is at least infringement under the doctrine of equivalence. The court's language that a stroke rail must extend from a foot rail to a frame should be disregarded, because whatever this means, it must at least encompass the way that the stroke rail disclosed in the patent extends to a frame. The way the stroke rail disclosed in the patent extends to the frame is via pin and a C-channel. Icon presented testimony from Dr. Rasky that connecting the stroke rail to the frame via pin and a C-channel is equivalent to connecting the stroke rail to the frame via rocker link. And that there was, therefore, at least infringement of the stroke rail element under the doctrine of equivalence. Your Honor, in our submission and as evidenced by the record in this case. You're kind of mounting up your equivalence arguments here, which we've always said is an exception that's rarely found, and you're invoking it multiple times. Does that suggest that maybe this accused device is a little outside the scope of your patent claims? No, Your Honor. This is a case of literal infringement. In the accused devices, there is a connecting means. Column four clearly demonstrates that that connecting means is the crank arm. Even Octane admits that its crank arm is essentially the same crank arm shown in the patent. But you don't have any linear displacement. The linear displacement spoken of really is a requirement of the necessity for a capability to perform that function. The capability to perform that function has been literally shown. A case of literal infringement, Dr. Rastish, you recall, tested. And the kinematic computer testing demonstrates that this crank arm that's contained within the accused devices can and has the capability to transform, convert that linear motion into elliptical motion. And that is all that is required pursuant to this court's Finjan decision. The Cyber Settle case would also be instructive in this regard. It is only the capability that must be demonstrated. That is certainly there. That is a case of literal infringement. As a backup position, Your Honor, we assert that there is unrebutted evidence in the record that at the very least there is infringement also under the doctrine of equivalence. And it has gone unrebutted. Taking all of these inferences and viewing them in a light most favorable to the non-moving party icon, this is a case that is right for adjudication at the trial level. Reversal is required because of the demonstrable legal errors that have occurred. And in this instance, it is appropriate to remand for appropriate adjudication on the question of literal infringement. I want to keep the rest of your rebuttal time, Mr. Leckoff. I do, Your Honor. Thank you. Your Honor, where do you prefer to have the visual aid? I have the pictures in the patent right here. We never advise that. It tends to detract from your time. But if you wish to do that, of course, that's your choice. So everything you have is in the briefs, which we've read. It is. I'll choose not to do that. Okay. Why don't you launch right in, and if you find yourself in vast need of something, we'll figure it out. May it please the Court. My name is Rudy Telcher. I'm with the law firm of Harness, Dickey & Pierce. I'm here on behalf of the APALEE, Octane Fitness. Octane prevailed at summary judgment non-infringement below. The district court's ruling provides three separate grounds for this court to grant affirmance of the summary judgment grant. First, Octane's linkage has no part that moves in a linear path. Second, Octane's structure has no C-channel or equivalent structure that would cause a piece of a linkage to go in a linear path. And three, Octane's linkage has no stroke rail or equivalent structure that extends from a foot rail down below up to a frame above. But your opponent says there is a stroke rail, but it just works through pins and other connectors. Your Honor, the term stroke rail is one that's not defined as this court knows. So we struggled below as to what is a stroke rail. It's shown in the figures, so we know what's shown. It's described in column three and column four. That's all that's described is that member that goes from down here to up here. There has been some confusion in the record as to us admitting that we have a stroke rail. To clear up that record, originally in this case was only the Q45 machine. They took the position that our actuator casting was our stroke rail. Stroke rail is a made up word. We said you can call it that. If you look in the Q45 machine, there is a motor and a screw on the Q45. Q47 is not in the case at this point. There is a motor that attaches between the actuator casting and the foot rail. So our position was call it a stroke rail. We don't care. Then ultimately, they added in the Q47 late in the case. At that point, the Q47 is constructed differently. What they call the stroke rail directly connects to the foot rail. At that point, we said okay, what is a stroke rail? That's just a matter of plain construction. We're all here, what is a stroke rail? We did our best below, tied it to the intrinsic record. You can tell Judge Montgomery, who is a judge who has handled many patent cases, who conscientiously delivered opinion, looked at the spec, looked at the stroke rail, and defined it along with us. Below, they didn't complain about the word extend. That's a new argument on appeal. If you go below, their arguments on stroke rail were that it was a limitless collection of parts, which Judge Montgomery correctly rejected, because that would read on every elliptical machine. So they didn't argue that it didn't extend up there. We've never said that a stroke rail has to connect directly, like welded onto the frame. What we've said is it extends from down here to up here. If you look in the drawings, you look in the spec, that is the only invention that's described. It's a rigid member. We've never argued it has to be unitary. We don't care whether it's 15 parts welded together or 3 parts bolted together. That member is a rigid member that goes from down here to up here. I think Judge Montgomery's interpretation is correct. They didn't complain below about extends, and they shouldn't be heard to be complaining about the word extends on appeal. But what we can say is we don't have that piece. We don't have a piece in our linkage system that goes from down here to up here. What we have is a multi-part linkage system. So if you look at, for example, the rocker link, which they want to say a rocker link is a C channel. The rocker link moves with respect to what they call our stroke rail. We don't have a rigid piece that goes from down here to up here. So whatever we all want to say stroke rail is, we don't have that equivalent piece in our device. What about connecting means? The connecting means what they're trying to tell the court is by in the spec, at one part as to their crank arm, they use the word connecting means. As to the C channel, they use attaching means. And so their argument is that because the claim says connecting means, it can only refer to the one. The fatal flaw, I mean, whether they intended it or not, the fatal flaw they made is the federal circuit law under Leitrim is absolutely clear. Once you define the function, which is linear reciprocating displacement, we have no choice. We are constrained by the statute. Claim differentiation is trumped. We have a duty under the statute to go look in the spec and figure out what structure performs the function. If you look at column four of the patent, it is absolutely undisputed. Column four binds three to six. The present invention also provides attaching means. This is the C channel. For attaching first end 70 to support stand 16, so as to simultaneously enable annular rotation and linear displacement of the first end. Read further down. Column four, line 16 and 17, first end 70 of stroke rail 66 is thus linear displaced as pin 76 is slightly moved within the channel. Now they go on to say that the connecting means also helps with this function. But they drafted the patent. The patent directly ties the linear displacement function to both. And they had two options. If in claim one, they wanted to only cover that crankshaft apparatus, they had two options. One, they could have had claim one not be means plus function. Two, if they wanted claim one not to read on it, but they wanted to use means plus function in the spec, they needed to have the crank arm relate to one function, which could have been to move the rail without talking about linear, and then the C channel to be what makes it go linear. Their expert, and their inventor, excuse me, admitted that without the C channel, that thing moves around. It won't go linear. The spec confirms that. Under layered trim, that's the end of the discussion. The C channel has to be in. We don't have a C channel. We don't have anything equivalent. What about the linear reciprocating motion? Why isn't a slight arc at least the equivalent of a linear motion? Well, there's a number of answers to that question. The first I would start you with is this court's own precedent in Friedman where a very similar issue was considered, and that was you had a folding seat. The element in dispute was the attaching means. In Friedman, ironically, because it's really quite on all fours with this case, it was slidable, and the defendant used rotatable. This court found that it would be vitiation in that circumstance to… Vitiation's a somewhat meaningless doctrine, isn't it? It's just re-performing the doctrine of equivalence all over again. You have a missing limitation in order to have the doctrine of equivalence, right? That's correct. Okay. In this case, the missing limitation is linear. It's not linear. It's slightly arc to it. Now, you're saying it's vitiated for exactly the same reason. You're re-performing the doctrine of equivalence a second time. Well, equivalence are factual, aren't they? Doesn't this have to go to the jury? Well, the doctrine of vitiation or one or Jekynton is performed as a matter of law. Yes, but you understand that that is just re-performing the doctrine of equivalence a second time so that we can have the fiction of calling it a legal doctrine. It's still the legal doctrine of whether there is substantially the same thing going on when it's arcuate with a slight arc as it is when it's linear. My answer would go beyond that, and here's my answer. Under Friedman, what it says is… You can go beyond it all you want. You can't get by the logic. No, no. I'm going to address the logic head on. I didn't mean to suggest that I wasn't going to answer that direct question because I like that question. Because it's the philosophical question, and it's the right question to ask. What Friedman says is there's no formula for vitiation. You have to take into consideration the circumstances. Now, let's get to the… You re-perform the doctrine of equivalence a second time. But if you're re-performing it the second time, why don't you perform it the first time the same way you do? It's a factual question. Doesn't that have to go to the jury? Well, the doctrine is in substantial difference. So if you call that a fact issue, that's fine. In our case, the circumstances are we have a rocker link that's fixed and it pivots with an arc. They keep calling it a slight arc. There's no evidence to say it's an arc. But you're saying no reasonable jury could, as a factual matter, find that a slight arc is the same as a line. Well, it's more than a slight arc. It's the slight arc. It's the structure and the slight arc. I mean, we have a… The answer to my question has to be yes. You believe that no reasonable jury would, as a factual matter, find this to be linear. Yes to that. Coupled with adding this… The way you phrased the question, I think the answer is absolutely yes. But I think it's just not only because there's an arc is different than a straight line, and not only because that straight line was actually the point of novelty which the examiner captured on. Those are all important reasons why the answer to your question is yes. But further to that, which is why I think this is much more than just – we didn't take their C channel. But see, the court didn't do that. The court said, no, I'm just going to say as a matter of law it's not the same. It didn't answer the more fundamental question of whether there is a factual distinction between a line and an arc. That is correct, Your Honor. Judge Montgomery did not. We have to send it back and say what you're really doing is the doctrine of equivalence analysis. Even if you're doing it the second time, do it right. Do it with a jury overlay and tell us if you're going to on summary judgment that there's no reasonable jury that could find this. You have the same record before you that Judge Montgomery had before her. Yes, but I'm not going to guess on factual issues. I'm going to send it to a fact finder. I don't know that any jury would be within its rights looking at these devices to find that these are equivalent. That is an entirely consistent and reasonable argument. You can make that argument well. All right. And that is what I believe. The only – You have a minute on your cross appeal or you can save it.  I don't think I have anything else to add. Okay. Mr. Laycock. Your Honors, there are two issues that weigh in favor of reversal and remand for adjudication of trial. The court, in a misapprehension of patent law and disregard of the doctrine of claim differentiation, misconstrued the claim term as it relates to the connecting means. The connecting means, when viewed in the context of column four, clearly is shown to be the crank arm. Octane admits they have one. That crank arm is capable, consistent with the case authorities, Finjan in particular, of performing the function defined. If they're modified. Not even without – well, not with modification. The capability exists in the device itself. That's literal infringement. The capability – Finjan, as you recall, there was a module in a computer program that was locked. It could not perform the function without being unlocked. But it had the capability. That's infringement. It's literal infringement in Finjan. It's literal infringement in the Octane matter as well. With respect to the argument on the stroke arm, the stroke arm, as recently as the brief, the principal brief of Octane in this case at page 43, demonstrates, calls out the device contained within the accused devices as a stroke arm. They admit it. They admit it because it's present. With respect to the Friedman decision, that is a difference between the difference in kind and the difference in degree. In Friedman, as you recall, that was a chair that folded up and down, and it required 180 degrees of arcuate movement. Here you have Dr. Rasti that show you that they are almost identical in the linear and slightly arcuate movement that is incorporated as part of this particular device. Under these circumstances – Linear reciprocating motion was part of what made your patent new and non-obvious. It was an important advance. If we allow that to be expanded to the doctrine of equivalence, aren't we failing to recognize the patent process for what it requires, which is just to acknowledge what advances are made and leave the rest for improvements? Not at all, Your Honor. In this particular case, it aligns very closely and appropriately with the cases that speak to the issue of degree. Here, it is so close, and that is, again, as this Court pointed out in your question on the question of fact determination, something that should be determined at the trial level by the trier of fact. This is a case where it is so identical and where you have a clear and unmistakable capability in the device at hand that there is no problem with respect to determination of infringement, literally, and also under the doctrine of equivalence. It can be shown, if necessary. Under the circumstances of this case, demonstrable legal error requires the reversal of the decision below. When taken appropriately and every inference, every factual inference and the evidence of record viewed in a light most favorable to the non-moving party icon is taken into account, this case cries out for an opportunity to be heard before a trier of fact jury. We ask this Court to reverse and remand on that basis. Thank you, Mr. Laycock. I didn't hear any argument on the cross appeal, so I don't think you have anything to respond to, Mr. Kelser. And we'll move on to our next case.